**UNITED STATES of America**

v.

**Albert Clement FURTNEY III, Appellant.**

**No. 18515.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 29, 1971.

Decided Jan. 19, 1972.

Gibbons, Circuit Judge, filed concurring opinion.

Louis C. La Lumere, Watzman, Levenson & Snyder, Pittsburgh, Pa., for appellant.

Kathleen Kelly Curtin, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., on the brief), for appellee.

Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal from a judgment of conviction entered in the district court for utterance of a counterfeit $20 Federal Reserve note with intent to defraud. 18 U.S.C. § 472.

Appellant attempted to pass the $20 bill at a Pittsburgh bar in payment for a drink. Upon receipt of the note the bartender discerned that it was counterfeit and alerted an off-duty policeman who immediately arrested appellant. These facts were not challenged. Thus, to sustain a conviction under § 472, it remained for the prosecution to establish only that at the time appellant passed the bill he possessed the requisite guilty intent. This it attempted to prove by the testimony of two witnesses, Tomsic and Cartwright. Each testified to having separately encountered appellant, on different occasions within a matter of months prior to his arrest, under circumstances linking him with counterfeit currency identical to that which precipitated his arrest.

■ The principal claim of error before us relates to the admission of Tomsic's in-court identification of appellant. It is contended that it was erroneously admitted because, although requested of the court, there was no pretrial determination that the identification was not tainted by Tomsic's possibly unconstitutional encounter with appellant immediately before the commencement of trial.[1]

Tomsic owned a small business in Ohio. In January, 1969, almost eleven months prior to appellant's trial, a stranger entered Tomsic's store and exchanged a $20 bill for a small purchase and change. A neighboring merchant thereafter alerted Tomsic to the fact that the bill was counterfeit. However, by then the stranger had departed. At appellant's trial the prosecution elicited from Tomsic an in-court identification of appellant as the stranger who had entered his store. By thus tying appellant to the earlier incident it sufficiently established prior conduct involving counterfeit currency to permit the jury to infer that, at the time appellant was arrested, he had the guilty intent requisite for conviction under § 472. *See generally* II Wigmore on Evidence, § 312 (Supp.1970).

Appellant contends, as he did throughout the proceedings in the trial court, that Tomsic's identification was inadmissible since it was tainted by a pretrial confrontation of Tomsic and appellant in violation of appellant's Sixth Amendment rights. *See* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The record on this issue is far from satisfactory. However, it does indicate that while Tomsic, in the presence of a secret service agent, was in the courtroom corridor awaiting commencement of appellant's trial he observed appellant standing near the courtroom doorway. There is no evidence that the encounter and Tomsic's recognition of appellant was other than spontaneous. *Cf.* United States v.

1. Also before us is appellant's contention that he was denied a fair trial by reason of the prosecutor's remarks in his summation concerning the general operations of a counterfeiting organization where no basis for such discussion had been established during the trial. We conclude that any error consequent to these tangential comments was cured by the court's instruction to the jury that "[t]he statements and arguments of counsel [were] not evidence in the case." The court expressly noted that the jury was "not to permit [themselves] to be influenced . . . by any statement of counsel during the progress of the trial, or arguments that [were] not warranted by the evidence." (Emphasis added.) *See* Czarnecki v. United States, 95 F.2d 32, 35 (3d Cir. 1938).

Seader, 440 F.2d 488, 496 (5th Cir. 1971); United States v. Pollack, 427 F. 2d 1168, 1169–1170 (5th Cir. 1970). Nor is there any evidence that Tomsic's encounter with appellant was anticipated by the prosecution. *Cf.* United States v. Wade, supra, 388 U.S. at 228, 87 S.Ct. 1926. Likewise, the record does not show that the authorities in any manner focused Tomsic's attention on appellant as the person sought to be identified. *Cf.* Simmons v. United States, 390 U.S. 377, 385, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). It indicates only that: (1) Tomsic's alleged January encounter with appellant had occurred months prior to appellant's trial and lasted only "3 or 4 minutes" during which time Tomsic had been given no reason to focus on appellant's identity; (2) while standing outside the courtroom Tomsic understood that the sole purpose for which he had been asked to appear was to identify the defendant who would be on trial; (3) Tomsic recognized appellant upon seeing him outside the courtroom; and (4) there was at least one secret service agent in Tomsic's immediate presence with whom Tomsic discussed appellant's appearance.

█ Appellant's counsel made a timely request for a pretrial hearing and circumstances were then apparent which dictated the need to find out what had happened. Consequently, the trial court should have accorded appellant an opportunity to attempt to discover whether the encounter of appellant and Tomsic outside the courtroom had been in fact an intentional "pretrial confrontation" proscribed by the safeguards enunciated in Wade. Id., 388 U.S. at 235, 87 S.Ct. 1926.

█ It is apparent that the *Wade* Court did not intend that such disclosure be made solely through cross-examination during trial. 388 U.S. at 235, 87 S.Ct. 1926. Rather, when as here an appellant presents a timely motion for a

*Wade* hearing and attempts to introduce evidence colorably demonstrating circumstances to which that opinion addressed itself, the mandate of the Supreme Court requires that the trial court provide defense counsel with an opportunity to establish convincingly that the *Wade* safeguards should be applied. Such an opportunity was denied the appellant and this was error.[2]

Of course, also before the jury was the testimony of Cartwright, who had been a longtime acquaintance of appellant. He related having met appellant on an occasion prior to his arrest and having then been shown "a quantity" of notes similar if not identical to that which appellant passed in this case. Four defense witnesses severely impugned Cartwright's reputation for telling the truth. Thus, we are unwilling to say that the jury would have convicted appellant in the absence of Tomsic's testimony.

We therefore remand this case to the district court for a hearing to determine whether the circumstances of Tomsic's encounter with appellant constituted a "critical confrontation" within the holding of United States v. Wade, *supra;* and, if so, whether in any event the in-court identification by Tomsic had a source independent of that tainted confrontation. Only if a *Wade* confrontation is found to have intentionally occurred and no independent source exists for admission of the in-court identification shall the conviction be vacated and a new trial be ordered by the district court.

GIBBONS, Circuit Judge (concurring).

Since I am not certain that Judge Seitz and I interpret the Supreme Court lineup decisions in the same way an expression of my view of this case is in order.

---

2. We do not agree with appellant's contention that a lineup, with counsel present, is a constitutional requisite to ad-

mission of a witness' in-court identification. *See* United States v. Ravich, 421 F.2d 1196, 1203 (2d Cir. 1970).

In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) the Supreme Court fashioned an exclusionary rule of evidence to deter law enforcement authorities from exhibiting an accused to a witness before trial for identification purposes without notice to and in the absence of counsel. The *Wade* rule was aimed at minimizing the possibility of a conviction resting on a mistaken identification by preventing unfairness at the pretrial confrontation and assuring meaningful examination of the identification witness' testimony at trial. The exclusionary rule was qualified, however, to the extent that assuming the law enforcement authorities had conducted a lineup in the absence of counsel, the in-court eyewitness testimony would nevertheless be admissible at trial if the court first determined that this identification was not tainted by the illegal lineup, but had an independent origin.

In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) the Court reiterated that it was fashioning a prophylactic rule. It held that, as in *Wade*, the in-court identification testimony was admissible, despite a violation of the rule requiring the presence of counsel if it could be shown, even after the trial, that the in-court identification had an independent source. Testimony that certain witnesses had identified Gilbert at the now illegal lineup, however, could not be admitted. This testimony was excluded not because it was unreliable—the court never reached that point—but because it was ". . . the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality.' Wong Sun v. United States, 371 U.S. 471, 488 [83 S. Ct. 407, 9 L.Ed.2d 441]." Gilbert v. California, *supra*, at 272–273, 87 S.Ct. at 1956–1957.

Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967) makes clear that the *Wade* and *Gilbert* cases lay down a prophylactic rule not dependent on reliability of the testimony or fairness of the lineup. It holds that the *Wade* rule is not retroactive, and that the admissibility of eye witness testimony not prohibited by the *Wade* exclusionary rule but following some pre-trial confrontation, is measured by a due process totality of circumstances test.

In this case there was ample opportunity to cross examine the witness Tomsic, and nothing in the totality of circumstances suggests that the admission of the testimony violated the due process test laid down in *Stovall*. The attorney for appellant sought, however, the opportunity for a *Wade* hearing. By this I understand that he desired the opportunity to establish that the law enforcement authorities arranged the confrontation between Tomsic and the appellant at the courtroom door. If he could have established this fact, then the government would have had to establish that Tomsic's in-court identification had an origin independent of the confrontation.

Judge Seitz's opinion orders a remand for a hearing to determine whether the circumstances of Tomsic's encounter with appellant was a "critical confrontation" within the holding of United States v. Wade, *supra*. I understand that this hearing will be directed not at whether the corridor confrontation was unduly suggestive, but solely at whether the law enforcement authorities arranged it. If they did not the inquiry should cease. If they did, then the government must show that Tomsic's in-court testimony had an independent origin.

This case should not be read as holding that in the absence of a *Wade* violation a defendant is entitled to a separate Stovall v. Denno hearing outside the presence of the jury.